UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREVEON CAMEL,

                Petitioner,

                                    CASE NO. 2:14-CV-12591
v.                                  HONORABLE NANCY G. EDMUNDS

CARMEN PALMER,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

This is a habeas case under 28 U.S.C. § 2254. Michigan prisoner Treveon Camel ("Petitioner") was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, carrying a concealed weapon, MICH. COMP. LAWS § 750.227, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Saginaw County Circuit Court. He was sentenced to 25 to 40 years imprisonment on the murder conviction, a concurrent term of two to five years imprisonment on the concealed weapon conviction, and a consecutive term of two years imprisonment on the felony firearm conviction in 2009. In his petition, he raises claims concerning the sufficiency of the evidence, the conduct of the prosecutor and the right to be free from self-incrimination, the effectiveness of trial counsel, and the effectiveness of appellate counsel. For the reasons set forth herein, the Court denies the petition for a writ of habeas corpus.

1

The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from the shooting death of 15-year-old Cquaton Holmes during an altercation in Saginaw, Michigan in 2007.   The Court adopts the statement of facts set forth by defense counsel on direct appeal to the extent that those facts are consistent with the record.   The facts are as follows:

> Michael East testified that on July 5, 2007, he was employed as a patrol officer for the City of Saginaw. (T.T. Vol. II p. 31) He was dispatched to South Warren and Emerson in reference to a shooting victim. (T.T. Vol. II p. 32) He observed a person lying in a field. The person was deceased with wounds in the arm, back, and chest. (T.T. Vol. II p. 33) He did not change the position of the body. (T.T. Vol. II p. 36)
>
> Dr. Kanu Virani testified and was qualified by the trial court as an expert in forensic pathology. (T.T. Vol. II p. 41-44) He performed an autopsy on July 6, 2007 on a Cquaton Holmes. (T.T. Vol. II p. 44) There were bullet wounds to the back and to the front on the arm. (T.T. Vol. II p. 45) There was an entrance wound to the right side of the back. (T.T. Vol. II p. 47) The exit wound was to the left side of the front of the chest. (T. T. Vol. II p. 48) The cause of the death was a gunshot wound to the back and the manner of the death was homicide. (T.T. Vol II p. 51) Dr. Virani expected the individual to remain conscious for about 30 seconds after receiving such a wound to the back that perforated the lungs and aorta. (T. T. Vol. II p. 52)
>
> James Vondette was employed in the identification bureau of the Saginaw City Police Department on July 5, 2007. (T.T. Vol. II p. 67) He was called to the homicide scene and observed the body covered by a sheet and a large crowd of people present. (T.T. Vol. II p. 68) The scene was taped up to keep the people out.  When the body was removed he received a small revolver from the victim's right front pocket. (T.T. Vol. II p. 69) It was a 38 special revolver. It was sent to the Michigan State Police crime lab for testing. (T.T. Vol. II p. 70) He was directed to 820 Emerson. (T.T. Vol. II p. 71) He photographed two spent fired cartridge casings. (T.T. Vol. II p. 72) He also photographed a bicycle that he was informed belonged to the victim. (T.T. Vol. II P. 72) The casings were also sent to the Michigan State Police Crime Lab. (T.T. Vol. II p. 75) He searched the area and did not find anything else of interest. (T.T. Vol. II p. 77)

2

Sabrina Barnes testified that on July 5, 2007, she was at her home on 909 South Warren Street. (T.T. Vol. II B p. 3-4) She was sitting in her car in the driveway when she heard three or four gunshots. (T.T. Vol II B p 4-5) She then saw "Twon" running in a field towards her house. Then he spun around and fell. She and her sister called an ambulance. She was sure that the person she saw was Cquaion Holmes. (T.T. Vol. II B p. 6-7)

Ashley Romero testified that in the summer of 2007, she was living at 820 Emerson Street. (T.T. Vol. II B p. 10) Defendant-Appellant was her boyfriend. (T.T. Vol II B p. 11) On July 5, 2007, Defendant-Appellant was at her home from 3:00 that afternoon until the evening news was over. (T.T. Vol. II B p. 14) She thought he was going out to his car for his phone but he didn't return right away. (T.T. Vol II B p. 15-17) Instead he left his car with Darquavious Miree. (T.T. Vol. II B p. 19) She heard the car return and then she could hear Cquaton's voice speaking loudly. She went out on the porch. (T.T. Vol. II B p. 20-2 l) She saw Cquaton and Defendant-Appellant. (T.T. Vol. II B p. 23) Cquaton was walking away with his bicycle. He called Defendant-Appellant a bitch. (T.T. Vol. II B p. 25) Defendant-Appellant pulled the trigger four times of his black semiautomatic handgun. (T.T. Vol. II B p. 26) Cquaton dropped the bike and grabbed his let arm. (T.T. Vol. II B 27) Before shorts were fired, he turned towards Defendant- Appellant and called him a bitch. (T.T. Vol. II B p. 28) She did not see anything other than the bicyc;le in Cquaton's hands. (T.T. Vol. II B p. 29) After the shots were fired, he dropped the bike and ran to the field. (T.T. Vol. II B 29) Defendant-Appellant ran to the back of her house. She could not see whether he had a gun. (T.T. Vol II B p. 32) He was behind the house for thirty seconds. (T.T. Vol. II B p.33) Defendant-Appellant then pulled out of Ms. Romero's driveway. She asked him to return her cell phone and he tossed it out the car window on her front lawn. (T.T. Vol. II B p. 35-36) She had never seen him carry a gun before. (T.T. Vol. II B p. 38)

Darquavious Miree testified that on July 5, 2007, he was on Emerson Street. (T.T. Vol. II B p. 66) He saw Defendant-Appellant at Ashley Romero's house. (T.T. Vol. II B p. 67) He asked Defendant-Appellant for a ride to the store and he agreed to take him. (T.T. Vol. II B p. 68) They had stopped on Brown Street on the way to the store. They saw four or five people on that street and they talked to them. These people included Kenarious and Cquaton Holmes. (T.T. Vol. II B p. 70) Defendant-Appellant asked Kenarious if he had stole his radio and Cquaton took offense to this. There was an agreement that they would meet on Emerson and fight there. (T.T. Vol. II B p. 71-72) When they returned to Emerson they saw Cquaton riding his bicycle towards them. Mr. Miree left to walk towards his friend's home. (T.T. Vol. II B p. 75-76) Mr. Miree could tell Cquaton had a gun because he had his hand in his right front pocket. (T.T. Vol. II B p. 77) Mr. Miree kept walking but continued to look back. (T. T. Vol. II B p. 78) Cquaton got off his bike and pointed his gun at Defendant-Appellant. (T.T. Vol. II B p. 79) He saw Defendant-Appellant wave

3

off the gun. (T.T. Vol. II B p. 80) He heard Cquaton say "you think I won't 'murk' you in front of Eric's grandma's house." (T.T. Vol. II B p. 82) Then Cquaton picked up his bicycle and walked away from Defendant-Appellant. (T.T. Vol. II B p. 83) He had seen Defendant -Appellant brush the gun away once or twice. (T.T. Vol. II B p. 84) He thought it was over and turned his head, then he heard three or four shots. He dropped the bike and ran toward the field. Mr. Miree saw him put the gun in his back pocket. The shots sounded like they were from the same gun. (T.T. Vol. II B p 85-86) He thought he saw Defendant-Appellant run to the back. (T.T. Vol. II B p. 89) He saw Cquaton run to the field with blood on his shirt and he collapsed. (T.T. Vol. II B p. 90) When he was in the car earlier that day with Defendant-Appellant he had the gun on his lap. (T.T. Vol. II B p. 93)

Kenneth Binder testified and was recognized as an expert in latent fingerprint examination. (T.T. Vol. III p. 3-5) He examined the two fired shell casings that were found at the scene and was unable to locate any fingerprints. (T.T. Vol. III p. 5-6)

Ryan Larrison testified and was recognized as an expert by the trial court in firearm and toolmark identification. (T.T. Vol. III p. 7-8) He examined the two fired shell casings. (T.T. Vol. III p. 8-9) He determined they were 9-millimeter caliber bullets that are consistent with being manufactured by Glock. (T.T. Vol. III p. 10) He also examined the .38 special caliber revolver. It was operable but required a heavy trigger pull. (T.T. Vol. III p. 11-12) He did not observe any lint in the barrel of the gun which could be an indication that it was recently fired. (T.T. Vol. III p. 13) He was familiar with the gunshot residue swab but it is not a test performed by the Michigan State Police labs. (T.T. Vol. III p. 14-16)

Robert Ruth testified that on July 5, 2007, he was one of the detectives assigned to this case. (T.T. Vol. III p. 29) He spoke with Defendant-Appellant's mother and father. They told him they would speak to their son. (T.T. Vol. III p. [ ]) On July 6, 2007 at about 2:45 p.m. Defendant-Appellant turned himself in. They did not perform the GSP swab on Cquaton Holmes. (T.T. Vol. III p. 31-32)

Pet. App. Brf., pp. 7-12. Petitioner did not testify at trial, but asserted a claim of self-defense.

At the close of trial, the jury convicted Petitioner of second-degree murder, carrying a concealed weapon, and felony firearm. The trial court subsequently sentenced him to

4

25 to 40 years imprisonment, a concurrent term of two to five years imprisonment, and a consecutive term of two years imprisonment.

Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the sufficiency of the evidence to submit a first-degree murder charge to the jury/denial of directed verdict motion, the sufficiency of the evidence to support his second-degree murder conviction, the prosecutor's closing argument comments implicating his right against self-incrimination, and the effectiveness of trial counsel for failing to object to those comments.  The court denied relief on those claims and affirmed his convictions. *People v. Camel*, No. 290270, 2010 WL 199612 (Mich. Ct. App. Jan. 21, 2010) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Camel*, 486 Mich. 1045, 783 N.W.2d 382 (2010).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising claims concerning the effectiveness of trial and appellate counsel.  The trial court denied the motion. *People v. Camel*, No. 07-029540-FC (Saginaw Co. Cir. Ct. Sept. 30, 2011).  Petitioner then filed a request for reconsideration and a supplemental motion for relief from judgment raising additional claims concerning the effectiveness of trial and appellate counsel, as well as a claim concerning the failure to conduct a gunshot residue test on the victim's hands.  The trial court denied those motions. *People v. Camel*, No. 07-029540-FC (Saginaw Co. Cir. Ct. April 2, 2012).  Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Camel*, No. 309059 (Mich. Ct. App. Aug. 24, 2012).  Petitioner filed an application for leave to appeal with the

Michigan Supreme Court, which was similarly denied.  *People v. Camel*, 493 Mich. 920, 823 N.W.2d 589 (Dec. 26, 2012).

Petitioner thereafter filed his initial, undated, federal habeas petition on January 24, 2013 raising claims concerning the sufficiency of the evidence, his right against self-incrimination, and the effectiveness of trial and appellate counsel.  Respondent filed an answer to the petition on August 2, 2013 asserting that it should be denied.  Petitioner, through counsel, subsequently moved to stay the proceedings so that he could return to state court on a second motion for relief from judgment and exhaust additional issues concerning the effectiveness of defense counsel and the non-disclosure of evidence (based upon a change in the law and newly-discovered evidence).  The Court denied the motion finding that Petitioner had not shown the need for a stay because only nine months of the one-year statute of limitations applicable to federal habeas actions had expired and three months remained.  Petitioner then moved to voluntarily dismiss his petition.  The Court granted that motion and dismissed his petition without prejudice on December 12, 2013. Petitioner thereafter moved to set aside that dismissal, reinstate his case, and waive the exhaustion requirement.  The Court denied that motion on February 5, 2014.  *See Camel v. Rapelje*, No. 2:13-CV-10308 (E.D. Mich.) (Edmunds, J.).

On or about June 1, 2014, Petitioner filed a second motion for relief from judgment with the state trial court raising claims concerning his right to a public trial during jury voir dire and a motion hearing and the effectiveness of trial counsel as to those issues, the non-disclosure of email evidence, the prosecution's concealment of a witness, the effectiveness of trial counsel, the non-disclosure of a plea offer, actual innocence and state impediment

6

to excuse his procedure default, and the effectiveness of appellate counsel. Those proceedings are apparently ongoing in state court.

On July 1, 2014, Petitioner filed the instant habeas petition. Respondent has filed an answer to the petition asserting that it should be denied because certain claims are barred by procedural default and all of the claims lack merit. Petitioner has not filed a reply to that answer.

## III.   Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

7

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in

8

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may

9

be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Analysis

### A. Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his second-degree murder conviction. Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

10

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, _ U.S. _, 132 S. Ct. 2, 4 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, the elements of second-degree murder are: 1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. MICH. COMP. LAWS § 750.317; *People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868 (1998) (citing *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996)). Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id.* at 464 (citing *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980)). Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. *People v. Djordjevic*, 230 Mich. App. 459, 463, 584 N.W.2d 610, 612 (1998) (citing *Aaron*).

11

Malice may also be inferred from the use of a deadly weapon. *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense. *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993).

Relying upon the foregoing standards, the Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> Romero testified that defendant shot Holmes as Holmes was walking away. Similarly, Miree testified that he thought the altercation between defendant and Holmes was over when he, Miree, turned his head and began to walk away. While Holmes did have a .38 special revolver, it was found in his right, front pocket. Under these circumstances, a rational trier of fact could conclude that defendant had not acted in self-defense when shooting Holmes. Defendant may have been enraged by the encounter, including being called a "bitch" by Holmes. But given that Holmes had broken-off the confrontation, had his gun in his pocket, and was walking away from the scene with his bike, a rational jury could conclude that defendant did not act out of impulse during a state of emotional excitement that was so intense that he acted before he could have calmed down.

*Camel*, 2010 WL 199612 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented sufficient evidence to establish Petitioner's guilt of second-degree murder through the testimony of Ashley Romero and Darquavious Miree, as well as reasonable inferences from their testimony. The fact that the victim's gun was in his pocket and that he was shot while walking away from the confrontation also supports the jury's verdict. Considered in a light favorable to the prosecution, the trial testimony and the physical evidence was sufficient to show that Petitioner acted with the requisite intent to support his second-degree murder conviction.

12

Petitioner challenges the inferences the jury drew from the evidence at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable.   The evidence at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed second-degree murder. Habeas relief is not warranted on this claim.

Petitioner is also not entitled to habeas relief on any claim that there was insufficient evidence to support the submission of the first-degree murder charge to the jury and/or that the trial court erred in denying his directed verdict motion on the first-degree murder charge.  Clearly-established Supreme Court law provides only that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that submission of a charge upon which there is insufficient evidence violates a defendant's constitutional rights where the defendant is acquitted of that charge.  *See Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006) (quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004)); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004).

The United States Court of Appeals for the Sixth Circuit has recognized that "[s]ome courts, under similar facts have concluded that submission to the jury of a charge

13

constituted harmless error in light of petitioner's acquittal on that charge." *Daniels v. Burke*, 83 F.3d 760, 765 n. 4 (6th Cir. 1996) (citing cases); *see also Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001), *but cf. Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D. Mich. 2002) (relying upon double jeopardy case of *Price v. Georgia*, 398 U.S. 323, 331 (1970)).  Given that Petitioner was acquitted of the first-degree murder charge and only found guilty of the lesser offense of second-degree murder, any error in submitting the first-degree murder charge to the jury was harmless and does not warrant habeas relief. Additionally, to the extent that Petitioner asserts that the trial court erred in denying his directed verdict motion under state law, he fails to state a claim for habeas relief.  *See King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001) (upholding district court's ruling that petitioner failed to state a habeas claim where he alleged that trial court erred in denying directed verdict motion on armed robbery charge and he was acquitted of that charge).

Lastly, even if Petitioner states a cognizable claim as to this issue, he is not entitled to relief.  Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate.  *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992). Premeditation and deliberation require sufficient time to allow the defendant to take a second look.  *Id.*  The time interval may be minimal –  merely seconds – depending upon the circumstances of the killing.  *People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497 (1975).  Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Schollaert*, 194 Mich. App. at 170.

14

The Michigan Court of Appeals considered this claim on direct appeal and denied

relief.  The court explained in relevant part:

> The prosecution presented sufficient evidence from which a jury could infer that defendant had sufficient time for reflection before shooting Holmes. Defendant's then-girlfriend, Ashley Romero, testified that she watched the killing from the front porch of her house. According to Romero, when she went out on her front porch, defendant and Holmes were on the sidewalk. Romero went onto her porch after hearing Holmes cursing and yelling outside. Romero said that she saw Holmes walking with his bike. Romero testified that as Holmes was walking away, he called defendant a "bitch." According to Romero, defendant then shot Holmes.
>
> Darquavious Miree, a friend of defendant, said that he watched defendant and Holmes argue from across the street. According to Miree, Holmes pulled out a gun and pointed it at defendant's head. Miree saw defendant reach for his gun, but not pull it out. Miree testified that next he saw Holmes pick up his bike and start to walk off with it. Miree thought the altercation was over, so he turned his head began walking. Miree then heard gunshots, looked back toward the house, and saw defendant holding a gun.
>
> Romero's and Miree's versions do not directly contradict each other, so it is possible that both scenarios are accurate. In other words, Miree witnessed the initial confrontation outside Romero's home and then Romero saw the actual shooting as Miree's back was to the scene. In both Romero's and Miree's versions, however, Holmes was walking away from defendant before he was shot. Additionally, the shots that struck Holmes were fired from behind him and a .38 special revolver was recovered from Holmes's right, front pocket. A rational jury could infer that defendant had an opportunity, undisturbed by the threat of imminent harm (as the Holmes's gun was in his pocket), to take a "second look" between forming a initial homicidal intent and ultimately pulling his gun and shooting Holmes in the back as he walked away from the confrontation.

*Camel*, 2010 WL 199612 at *1-2.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  The prosecution presented sufficient

evidence of malice and premeditation and deliberation through the testimony of Ashley

15

Romero and Darquavious Miree to support submitting the first-degree murder charge to the jury. Habeas relief is not warranted on this claim.

### B.   Prosecutorial Misconduct/Self-Incrimination Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engage in misconduct and violated his Fifth Amendment protection against self-incrimination during closing arguments by stating that Petitioner fled the scene after the shooting, did not turn himself in until the next day, and did not give his gun to the police. Respondent contends that this claim is barred by procedural default and lacks merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on this claim. In denying relief, the court relied upon the failure to object at trial. *Camel*, 2010 WL 199612 at *3. The failure to make a contemporaneous objection is a recognized and

16

firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130, 138 (1999); *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557, 579 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on this claim based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his or her ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

17

In this case, Petitioner alleges that trial counsel was ineffective as cause to excuse this default. Petitioner, however, cannot establish that trial counsel was ineffective (so as to establish cause), nor can he establish actual prejudice, as this claim lacks merit. As explained by the Michigan Court of Appeals on plain error review, the prosecutor's comment on Petitioner's flight from the crime scene was proper. Evidence of flight is relevant and admissible to show consciousness of guilt under Michigan law. *See People v. Goodin*, 257 Mich. App. 425, 432, 668 N.W.2d 392 (2003); *People v. Coleman*, 210 Mich. App. 1, 4, 532 N.W.2d 885 (1995). Although the Supreme Court has expressed skepticism as to the probative value of evidence of flight, *see Wong Sun v. United States*, 371 U.S. 471, 483 n. 10 (1963), it has recognized that such evidence may be relevant to show consciousness of guilt. *See United States v. Scheffer*, 523 U.S. 303, 331 (1998) (dissenting opinion of Stevens, J.). Federal appellate courts have also held that evidence of flight is admissible to show consciousness of guilt. *See United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989); *accord United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002); *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002). The admission of flight evidence is not fundamentally unfair. *See, e.g., Wright v. Jamrog*, No. 04-CV-71585-DT, 2005 WL 3262544, *7 (E.D. Mich. 2005) (admission of flight evidence was proper under Michigan law and did not justify habeas relief); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 580 (E.D. Mich. 2004), *aff'd* 398 F.3d 783 (6th Cir. 2005).

The prosecutor's remark about Petitioner's delay in turning himself in was also proper. Under Michigan law, a prosecutor may comment on a defendant's failure to report a crime when doing so would have been natural if the defendant's version of events were true. People v. McGhee, 268 Mich. App. 600, 634-35, 709 N.W.2d 595 (2005). The

18

remark was also proper as a challenge to Petitioner's theory of self-defense. It is well-established that a prosecutor may highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). The prosecutor's comment on the gun not being turned in was similarly proper because it challenged the defense theory of the case.

Additionally, any potential error by the prosecutor was mitigated by the fact that the trial court properly instructed the jury that the attorneys' arguments were not evidence, that the prosecutor had the burden of proof, and that Petitioner had a right not to testify at trial. *See, e.g., Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003) (ruling that trial court's instructions defeated habeas petitioner's claim that he was denied a fair trial based upon improper prosecutorial argument). Jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors...take an oath to follow the law as charged, and they are expected to follow it."). Petitioner fails to show that the prosecutor's remarks were improper, that they violated his right against self-incrimination, or that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Petitioner also fails to demonstrate that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional

19

violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner makes no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

### C.   Ineffective Assistance of Trial Counsel Claims

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to raise an imperfect self-defense claim, for failing to introduce evidence of the victim's violent reputation, for failing to secure a gunshot residue test of the victim's hands, for erroneously advising him that he could be impeached with his suppressed statements if he testified at trial, and by referencing a duel at the preliminary examination. Respondent contends that these claims are barred by procedural default and that they lack merit. Petitioner first raised these issues in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

As noted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at 524. The last explained state court judgment should be used to make this determination. *Ylst*, 501 U.S.

20

at 803-05.  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented these ineffective assistance of trial counsel claims to the state courts in his motion for relief from judgment.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  *See* MICH. CT. R. 6.508(D)(3).  The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds by ruling that Petitioner had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal.  *See Camel*, Saginaw Co. Cir. Ct. No. 07-029540-FC, Sept. 30, 2011 Opin. at *2-7; April 2, 2012 Opin. at *3, 5-10.  The state courts thus clearly relied upon a procedural default to deny Petitioner relief on these claims. Accordingly, the claims are procedurally defaulted.

Again, as noted, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance

21

and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85.

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default.  In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).   In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690.  Judicial scrutiny of counsel's performance is thus "highly deferential."  *Id.* at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

22

*Id.* at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal.  *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel raised substantial claims on direct appeal including a directed verdict claim, a sufficiency of evidence claim, and a prosecutorial misconduct/self-incrimination claim.  None of the defaulted claims are "dead-bang winners" since the trial court's ruled that they lack merit, and given the significant evidence of guilt presented at trial.  Moreover, even if it appellate counsel erred, Petitioner cannot show that he was prejudiced by appellate counsel's conduct (or demonstrate prejudice to excuse the procedural default) because the defaulted claims lack merit for the reasons stated by the trial court in denying relief from judgment, *see Camel*, Saginaw Co. Cir. Ct. No. 07-029540-FC, Sept. 30, 2011 Opin. at *2-7; April 2, 2012 Opin. at *3-10, and as further discussed by Respondent.  *See* Resp. Answer, pp. 62-79.  Petitioner fails to

establish that defense counsel erred and/or that he was prejudiced by counsel's conduct as required by *Strickland*, 466 U.S. at 687.

Lastly, as previously discussed, Petitioner fails to demonstrate that a fundamental miscarriage of justice has occurred. These ineffective assistance of trial counsel claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### D.   Ineffective Assistance of Appellate Counsel Claim

Petitioner also raises an independent claim that appellate counsel was ineffective for failing to raise the foregoing ineffective assistance of trial counsel claims on direct appeal (and perhaps a claim that the police should have performed a gunshot residue test on the victim's hands). Respondent contends that this claim lacks merit.

The state trial court denied relief on this claim on collateral review finding that Petitioner could not establish that appellate counsel was ineffective because the underlying claims lacked merit. *See Camel*, Saginaw Co. Cir. Ct. No. 07-029540-FC, Sept. 30, 2011 Opin. at *7; April 2, 2012 Opin. at *8-10.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The ineffective assistance of appellate counsel claim, while not itself procedurally defaulted, nonetheless lacks merit. As discussed *supra*, Petitioner fails to establish that appellate counsel was ineffective under the *Strickland* standard and the defaulted claims lack merit. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). Habeas relief is not warranted on this claim.

### V.   Conclusion

24

For the reasons stated, the Court concludes that Petitioner is not entitled to relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

The Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings. No certificate of appealability is warranted. Nor should Petitioner be granted leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed in forma pauperis on appeal is **DENIED**.


s/ Nancy G. Edmunds_____
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated:  June 13, 2016